UNITED STATES DISTRICT COURT

DISTRICT OF ALASKA

| | |
|---|---|
| ROBERTA URENA,<br><br>      Plaintiff,<br><br>      vs.<br><br>SCHINDLER ELEVATOR CORPORATION and COLUMBIA SUSSEX,<br><br>      Defendants. | 3:15-CV-00223-JWS<br><br>ORDER AND OPINION<br><br>[Re: Motion at docket 103, 110, 113] |

## I. MOTIONS PRESENTED

At docket 103, Plaintiff Roberta Urena ("Plaintiff") requests that the court rule in advance of trial that the doctrine of *res ipsa loquitur* applies to this case, which involves injuries allegedly caused by an elevator malfunction, thereby lessening Plaintiff's burden on the showing of negligence. Schindler Elevator and Columbia Sussex ("Defendants") oppose the motion at docket 132.

At docket 113, Plaintiff asks the court to rule that a heightened "common carrier" standard of care applies to this case. Defendants oppose the motion at docket 130.

At docket 110, Plaintiff requests that the court, if not inclined to rule in her favor on the appropriate standard of care, certify these issues as ones appropriate for the Alaska Supreme Court to answer. Defendants initially opposed Plaintiff's request at docket 136.

## II. BACKGROUND

This lawsuit arises out of an elevator malfunction that occurred on September 21, 2013, at the Hilton Hotel in downtown Anchorage. Plaintiff was the sole passenger in the Hilton elevator when it made an unexpected safety stop. Plaintiff alleges that the elevator plunged in a free fall for eight floors before coming to a stop. Plaintiff was trapped in the elevator between the fifth and sixth floors and had to be extracted by the Anchorage Fire Department. She alleges that she suffered injuries because of the fall. Defendants acknowledge that there was an unexpected emergency stop but dispute that the elevator did a free fall and dispute the distance the elevator dropped during the stop.

## III. DISCUSSION

### A. *Res Ipsa Loquitur*

"The doctrine of *res ipsa loquitur* permits, but does not compel, an inference of negligence from the circumstances of an injury."[1] "The doctrine, where applicable, is a bridge, dispensing with the requirement that a plaintiff specifically prove breach of duty, once that duty and proximate cause have been established."[2] The doctrine should be applied when:

> (1) the accident is one which ordinarily does not occur in the absence of someone's negligence;
> (2) the agency or instrumentality is within the exclusive control of the defendant;
> (3) the injurious condition or occurrence was not due to any voluntary action or contribution on the part of the plaintiff.[3]

This three-part inquiry helps determine whether the plaintiff's evidence is sufficient to show that it is more probable than not that the injury resulted from the defendant's breach of duty. That is, "where several causes of an accident are equally probable, a plaintiff may still avail himself of res ipsa loquitur by presenting evidence which tends to

---

[1] *State Farm Fire & Cas. Co. v. Municipality of Anchorage*, 788 P.2d 726, 730 (1990).

[2] *Widmyer v. Se. Skyways, Inc.*, 584 P.2d 1, 10 (Alaska 1978) (footnotes omitted).

[3] *Id.* at 11.

eliminate all but those causes resulting from defendant's negligence."[4] If the plaintiff succeeds in doing so, an inference of negligence on the part of the defendant arises and the defendant must present rebuttal evidence.[5] "[T]he doctrine makes recovery possible where circumstances render proof of the defendant's specific act of negligence impracticable and the defendant is the party in the superior, if not the only, position to determine the cause of an accident."[6]

Plaintiff asserts that the doctrine of *res ipsa loquitur* is generally applicable in cases involving elevator malfunctioning. She asserts that "elevators which are correctly constructed, kept in repair, and adequately inspected normally do not fall," and when one does fall there is a reasonable inference of negligence.[7] The doctrine of *res ipsa loquitur*, however, "does not allow negligence to be established from the mere fact of injury itself."[8] Rather, as discussed above, its application depends on the circumstances surrounding an injury.[9] At this juncture of the litigation, the circumstances surrounding the elevator's emergency stop are not beyond reasonable dispute. That is, at this time, Plaintiff has not shown that her evidence will be sufficient to instruct the jury on the issue of *res ipsa loquitur*.

Plaintiff asks that in lieu of ruling on the application of *res ipsa loquitur* to this case, it certify the issue to the Alaska Supreme Court. She wants the state court to weigh in on whether *res ipsa loquitur* automatically applied to cases involving an elevator malfunction. However, the court concludes that certification is not warranted

---

[4] *Lynden Transp., Inc. v. Haragan*, 623 P. 2d 789, 794 (Alaska 1981).

[5] *Id.* at 794-95 (quoting *Am. Elevator Co. v. Briscoe*, 572 P.2d 534 (Nev. 1977)).

[6] *State Farm*, 788 P.2d at 730.

[7] Doc. 90 at p. 10.

[8] *Widmyer*, 584 P.2d at 10.

[9] *Id.* at 13 ("While it is clear that [r]es ipsa loquitur is applicable in general to aviation cases, it is not necessarily applicable to every such case since the specific circumstances will vary.").

under Rule 407(a) of the Alaska Rules of Appellate Procedure.[10] An answer to the question would not be determinative here, because, as noted above, even if the doctrine may be generally applicable to malfunctioning elevator cases, it does not follow that it would be applicable here since its application depends on the specific circumstances of every case and whether Plaintiff's evidence tends to "eliminate all but those causes resulting from defendant's negligence." While there is no directly controlling precedent related to elevator cases, there is sufficient Alaska Supreme Court precedent explaining how the state court applies the doctrine of *res ipsa loquitur* so that this court can "approximate state law as closely as possible" and predict how state court would rule on this issue.[11]

**B.    Common Carrier**

Plaintiff argues that the court should treat Defendants as "common carriers" thereby subjecting them to a higher standard of care. She argues that the Alaska Supreme Court has applied the heightened standard to airline operators. In doing so, the Court reasoned that "a general duty of due care instruction is inadequate with respect to common carriers transporting passengers for hire."[12] She argues that while the Supreme Court has not articulated a test for determining whether a defendant is a common carrier, elevators are akin to airplanes because passengers of each "are completely at the mercy of the carrier and are entitled to assume that the highest degree of care is being taken for their safety."[13] Given the similar vulnerabilities

---

[10]Alaska R. App. P. 407(a) ("The supreme court may answer questions of law certified to it by . . . a United States district court, . . . when requested by the certifying court if there are involved in any proceeding before it questions of law of this state which may be determinative of the cause then pending in the certifying court and as to which it appears to the certifying court there is no controlling precedent in the decisions of the supreme court of this state.").

[11]*Ticknor v. Choice Hotels Int'l, Inc.*, 265 F.3d 931, 939 (9th Cir. 2001) (internal quotation omitted).

[12]*Widmyer*, 584 P.2d at 5.

[13]*Id.* (discussing why airline passengers are owed a heightened duty of care).

between an airline passenger and an elevator passenger, Plaintiff argues that Alaska law would treat Defendants as common carriers.

Defendants argue that the Alaska Supreme Court has limited the common carrier heightened standard of care to the context of an airline and its passengers and would not extend its application any further. In support they cite *State v. Johnson*[14] where the Court noted that a heightened standard of care does not categorically apply to situations where the plaintiff and defendant have a relationship that is comparable to an airline and its passengers.[15] They argue the appropriate standard under Alaska law is simply that the defendant exercise the care that is reasonable and prudent under the circumstances.[16]

Defendant also points to AS 05.20.010 in support of its argument. In that statute, the state legislature declared that an owner or operator of ski equipment and devices, as defined in AS 05.20.120, "is not considered a common carrier."[17] A "device" under AS 05.20.120 includes those items "designed and operated for the conveyance or movement of persons and that is used as a source of or aids in the promoting of entertainment, pleasure, play, relaxation, or instruction including but not limited to ski tows, roller coasters, merry-go-rounds, and Ferris wheels."[18] Defendants assert that elevators are more akin to these ski "devices" than to airplanes and therefore the common carrier standards should not apply to elevator cases.

The issue of common carrier liability for elevator owners has been decided in a number of other states. As outlined by the Maryland Court of Special Appeals in *John*

---

[14] 2 P.3d 56 (Alaska 2000).

[15] *Id.* at 60 n.15

[16] *Id.* 60.

[17] AS 05.20.010.

[18] AS 05.20.120.

*Hopkins Hospital v. Correia*,[19] 21 states, including four states within the Ninth Circuit, have concluded that elevator owners or operators are held to the standard of care of common carriers, and 14 states, including three other states within the Ninth Circuit, have held that elevator owners or operators are held to an ordinary care standard.[20]

In the absence of controlling precedent by the Alaska Supreme Court, this court would normally attempt to predict how the Alaska Supreme Court would resolve the issue based on related case law. However, it is difficult to approximate state law in this instance given the Alaska Supreme Court's existing case law on standards of care, the legislature's enactment of AS 05.20.010, and the split among other states. This uncertainty, combined with the fact that the standard of care could be determinative, leads the court to conclude that it is presented with a rare instance where certification of the issue under Alaska Appellate Rule 407(a) is appropriate. Therefore, Plaintiff's motion to certify questions to the Alaska Supreme Court at docket 110 is granted as to the common carrier issue. Plaintiff's motion at docket 113 requesting that the common carrier standard be applied here is denied without prejudice to renew pending the Alaska Supreme Court's certification decision.

## IV. CONCLUSION

Based on the preceding discussion, the motions at docket 103 and docket 113 are denied without prejudice. The motion at docket 110 is granted as to the common carrier question. The court's order certifying the question to the Alaska Supreme Court will follow.

DATED this 3rd day of March 2019.

/s/ JOHN W. SEDWICK
SENIOR JUDGE, UNITED STATES DISTRICT COURT

---

[19] 921 A.2d 837 (Md. Ct. Spec. App. 2007).

[20] *Id.* at 841-44.